UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SMITHLINE FAMILY TRUST II, as Assignee of
Puritan Partners LLC,

                                    Plaintiff,

                    -against-

FOXO TECHNOLOGIES, INC., a Delaware
Corporation, and JON SABES,

                                    Defendants.

Case No. 1:22-cv-10858 (VEC)

---

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COMPLAINT AS TO DEFENDANT JON SABES**

---

**FARRELL FRITZ, P.C.**
*Attorneys for Defendant Jon Sabes*

622 Third Avenue, Suite 37200
New York, New York 10017
(212) 687-1230

*Of Counsel:*
        Matthew D. Donovan
        Becky (Hyun Jeong) Baek

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

    A.   Jurisdictional Facts ...........................................................................................3

    B.   Allegations Against Sabes ..................................................................................4

ARGUMENT .................................................................................................................... 7

   I.      THE COURT LACKS PERSONAL JURISDICTION OVER SABES. ....................7

    A.   Legal Standard..................................................................................................7

    B.   The Financing Documents Do Not Serve as a Basis for Exercising
         "Exclusive General Jurisdiction" over Sabes in New York. ........................9

    C.   Smithline Fails to Otherwise Establish that this Court Has
         "Exclusive General Jurisdiction" over Sabes. ...........................................11

    D.   Smithline Cannot Establish that Sabes Has the Requisite Minimum
         Contacts with New York to Satisfy Constitutional Due Process Considerations. .....12

   II.     EVEN ASSUMING PERSONAL JURISDICTION (THERE IS NONE),
       SMITHLINE'S CLAIMS AGAINST SABES NONETHELESS FAIL
       AS A MATTER OF LAW AND MUST BE DISMISSED. ....................................14

    A.   Legal Standard................................................................................................14

    B.   Smithline Fails to State a Claim Against Sabes for Fraud (Count III).....................14

        1.   No Fraudulent Inducement of Smithline's Initial Investment
            in FOXO Because the Alleged Omissions Concerned Post-Financing
            Transactions...................................................................................15

        2.   No Fraudulent Inducement of the Amendment Because There Was No
            Reasonable Reliance on the Alleged Omissions, and No Damages.................17

        3.   The Alleged Misrepresentation Cannot Serve as a Basis for the
            Fraud Claim Because Smithline Stops Short of Actually Alleging
            That Sabes Made A False Representation. .......................................19

    C.   Smithline Fails to State a Claim Against Sabes for Unjust Enrichment (Count II). ..20

    D.   The Claims Against Sabes Are Duplicative and Must Be Dismissed. .....................22

i

1.   Fraud Is Duplicative of the Breach of Contract. ...............................................22

2.   Unjust Enrichment Is Duplicative of Fraud and Breach of Contract. ...............23

CONCLUSION................................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amusement Indus., Inc. v. Stern,*
  786 F. Supp. 2d 758 (S.D.N.Y. 2011) ..................................................................... 18

*Arcadia Biosciences, Inc. v. Vilmorin & Cie,*
  356 F.Supp.3d 379 (S.D.N.Y. 2019) ........................................................................ 9

*Arrowsmith v. United Press Int'l,*
  320 F.2d 219 (2d Cir. 1963) ..................................................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................ 14

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
  968 F.2d 196 (2d Cir.1992) ...................................................................................... 8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................................... 13, 14

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,*
  448 F.3d 573 (2d Cir. 2006) ................................................................................... 21

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  467 F. App'x 4 (2d Cir. 2012) ................................................................................ 10

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
  98 F.3d 13 (2d Cir. 1996) ....................................................................................... 22

*Brinkmann v. Adrian Carriers, Inc.,*
  29 A.D.3d 615 (2006) ............................................................................................... 9

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) .................................................................................................. 9

*Clement v. Farmington Cas. Co.,*
  No. 13-CV-1026 NSR, 2015 WL 6971565 (S.D.N.Y. Nov. 10, 2015) ................... 23

*Cont'l Indus. Grp., Inc. v. Altunkilic,*
  2018 WL 1508566 (S.D.N.Y. Mar. 27, 2018) ........................................................ 23

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.,*
  586 F. App'x 768 (2d Cir. 2014) .............................................................................. 9

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d 777 (2012) ........................................................................................... 23

*Diamond v. ShiftPixy, Inc.*,
   No. 20-CV-7305, 2021 WL 3085405 n.9 (S.D.N.Y. July 19, 2021) .......................... 9

*Ehrenfeld v. Mahfouz*,
   489 F.3d 542 (2d Cir. 2007) ................................................................................... 13

*Famous Horse Inc. v. 5th Avenue Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010) ................................................................................... 14

*FPP, LLC v. Xaxis US, LLC*,
   764 F. App'x 92 (2d Cir. 2019) ............................................................................... 22

*Gerszberg v. Iconix Brand Grp., Inc.*,
   2018 WL 2108239 (S.D.N.Y. May 7, 2018) ........................................................... 23

*Goldman v. Metropolitan Life Ins. Co.*,
   5 N.Y.3d 561 [2005] ............................................................................................... 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ............................................................................................... 11

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ............................................................................................... 13

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
   763 F.2d 55 (2d Cir. 1985) ..................................................................................... 11

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
   No. 20-CV-00967 (LJL), 2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ...................... 9

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
   529 F.Supp.3d 111 (S.D.N.Y. 2021) ......................................................................... 8

*In re Take-Two Interactive Secs. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) ..................................................................... 14

*In re Terrorist Attacks on Sept. 11,
   2011*, 714 F.3d 659 (2d Cir. 2013) .......................................................................... 8

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945) ............................................................................................... 12

*Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*,
   450 F. Supp. 3d 358 (S.D.N.Y. 2020) ........................................................ 15, 18, 23

*Izquierdo v. Mondelez Int'l, Inc.*,
　No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ................................ 24

*Jazini v. Nissan Motor Co.*,
　148 F.3d 181 (2d Cir. 1998) ........................................................................................... 9

*Kaye v. Grossman*,
　202 F.3d 611 (2d Cir. 2000) ................................................................................... 20, 23

*Landoil Resources v. Alexander & Alexander Servs., Inc.*,
　918 F.2d 1039 (2d Cir. 1990) ........................................................................................ 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
　732 F.3d 161 (2d Cir. 2013) .......................................................................................... 13

*Lugones v. Pete & Gerry's Organic, LLC*,
　2020 WL 871521 (S.D.N.Y. Feb. 21, 2020) ................................................................... 7

*M+J Savitt, Inc. v. Savitt*,
　2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) ................................................................. 20

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
　84 F.3d 560 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996) .................................. 8

*Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*,
　No. 02 Civ. 0767, 2003 WL 22882137 (S.D.N.Y. Dec. 4, 2003) ............................... 10

*New York Univ. v Factory Mut. Ins. Co.*, 15 CIV. 8505 (NRB),
　2018 WL 1737745 (S.D.N.Y. Mar. 27, 2018) .............................................................. 16

*Reynolds v. Lifewatch, Inc.*,
　136 F. Supp. 3d 503 (S.D.N.Y. 2015) ........................................................................... 23

*Robinson v. Overseas Military Sales Corp.*,
　21 F.3d 502 (2d Cir. 1994) ............................................................................................. 8

*Rosenblatt v. Christie, Manson & Woods Ltd.*,
　No. 04 CIV. 4205 (PKC), 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005), *aff'd sub nom.*
　*Rosenblatt v. Christi*e, 195 F. App'x 11 (2d Cir. 2006) ............................................... 22

*Schlaifer Nance & Co. v. Estate of Warhol*,
　119 F.3d 91 (2d Cir. 1997) ............................................................................................ 14

*TAGC Mgt., LLC v. Lehman*,
　2011 WL 3796350 (S.D.N.Y. Aug. 24, 2011) ................................................................ 7

*Wallace Church & Co. Inc. v. Wyattzier, LLC*,
　No. 20-cv-1914 (CM), 2020 WL 4369850 (S.D.N.Y. Jul. 30, 2020) ................... 11, 12

*Whitaker v. Am. Telecasting, Inc.*,
  261 F.3d 196 (2d Cir. 2001)....................................................................................... 7

**Rules**

Federal Rules of Civil Procedure Rules 12(b)(2) & (6).................................................. 1

Federal Rules of Civil Procedure Rule 4(k)(1)(A) ...................................................... 8

Federal Rules of Civil Procedure Rule 9(b)......................................................... 15, 18

New York Civil Practice Law and Rules Section 301 .................................... 11, 12, 15

Defendant Jon Sabes ("Sabes"), by and through his attorneys, Farrell Fritz, P.C., respectfully submits this memorandum of law, together with the declaration of Jon Sabes, dated February 1, 2023 ("Sabes Decl."), the declaration of Matthew D. Donovan, Esq., dated February 1, 2023 ("Donovan Decl."), and the exhibits respectively appended thereto, in support of his motion to dismiss the verified complaint, dated November 18, 2022 ("Complaint") of Smithline Family Trust II, as Assignee of Puritan Partners LLC ("Smithline" or "Plaintiff")[1] pursuant to Federal Rules of Civil Procedure ("FRCP") Rules 12(b)(2) & (6), and states as follows:

## PRELIMINARY STATEMENT

This action concerns a disgruntled investor of high-risk/high-reward microcap stock attempting to unilaterally secure for itself a *better deal* than the one it negotiated and entered into. Smithline would have this Court set aside the relevant investment agreements[2] and permit Smithline to cash out on its investment in FOXO Technologies Inc. ("FOXO") at terms not found in any of the Financing Documents or the Amendment (*i.e.* the agreements FOXO and Smithline's predecessor-in-interest entered into, and the only bases for Smithline's claimed entitlements). Smithline now blames FOXO and its then-CEO Jon Sabes for allegedly allowing later investors to exit their positions more favorably than Smithline, and twists the financing arrangement into revisionist history, claiming breach of contract, unjust enrichment, and fraudulent inducement for defendants' alleged failure to disclose certain material facts.

---

[1] For the purposes of this Motion, Smithline and Puritan Partners LLC ("Puritan") (Smithline's predecessor-in-interest and the entity that was party to the subject agreements) will be referred to interchangeably and simply referred to as "Smithline."

[2] The subject agreements in this action are: the Securities Purchase Agreement, dated January 25, 2021 ("SPA"); the 12.5% Original Issue Discount Convertible Debenture, due February 23, 2022 ("Debenture"); the Warrant to purchase, initially, up to 312,500 shares of FOXO common stock until February 23, 2024 ("Warrant"; together with SPA, Debenture and documents in connection therewith, the "Financing Documents"); and the Revised Contingent Amendment Agreement, dated February 18, 2022 ("Amendment").

But even setting aside the meritless nature of the allegations (to be sure, there is no truth to any of the claims), Smithline wholly fails to allege any facts that might sustain any of its claims against Sabes, sued here in his individual capacity.

As a threshold issue, Smithline fails to allege even a *single* fact that would warrant haling Sabes into a New York court. Sabes is a Texas resident with little to no personal or business connections to New York, of which none are alleged. Smithline cannot demonstrate, as is its burden, that there exists personal jurisdiction over Sabes in New York under New York's long-arm statute and that such jurisdiction comports with due process.

But even if Smithline could satisfy its burden of proof on personal jurisdiction, Smithline fails to adequately plead any cause of action against Sabes. Smithline asserts unjust enrichment and fraud claims against Sabes based upon an alleged failure to disclose certain facts Smithline contends were material to its decision to enter into the Financing Documents and consent to the Amendment. Much like the personal jurisdiction analysis, however, Smithline largely fails to identify when, where, and how Sabes in his individual capacity engaged in any actionable conduct to Smithline's detriment.

Smithline also fails to allege that it reasonably relied on these supposed omissions to its detriment—especially given the fact that FOXO's broker-dealer (not Sabes) was largely responsible for soliciting and facilitating the financing and appears to have been the main point of contact between Smithline and FOXO—or that Sabes was unjustly enriched by these omissions. In fact, most of the alleged misconduct concerned as-yet uncontemplated terms and conditions of FOXO's *future* merger with a special purpose acquisition company.

The claims against Sabes fail for the additional reason that they are duplicative of each other, and premised on the <u>same</u> alleged failures to disclose by the <u>same</u> actors and seeking the <u>same</u> measure of damages.

Given the lack of personal jurisdiction over Sabes, and the wholesale failure to state a claim against him individually, this Court should dismiss Complaint in its entirety as to Sabes.

<u>**STATEMENT OF FACTS**</u>

The Court is respectfully referred to the Complaint for the allegations stated therein. Additionally, the Court is respectfully referred to the Sabes Decl. for jurisdictional facts relevant to this Motion.

**A.  Jurisdictional Facts**

Defendant Jon Sabes is a resident of Austin, Texas, where he has lived for the last three years. Sabes Decl. ¶ 2. Prior to living in Texas, Sabes resided in Wayzata, Minnesota for approximately 20 years. *Id.* at ¶ 3. Sabes does not own or rent real property in New York, nor does he own personal property in New York. *Id.* at ¶¶ 4-5. Sabes has only visited New York on one or two occasions over the last few years in his then-capacity as CEO of FOXO. *Id.* at ¶ 7. He has not otherwise conducted any business personally in New York for over 15 years, and is not presently conducting business in New York. *Id.* at ¶ 9. Sabes was not personally served with process in this action within New York. *Id.* at ¶ 16.

For its part, FOXO is a Delaware entity with a principal place of business in Minnesota. *Id.* at ¶ 10; *see also* Donovan Decl. Ex. B (Notice of Removal at ¶ 6). At all relevant times, neither FOXO nor Sabes had offices or employees in New York. *Id.* at ¶¶ 6, 11. To the limited extent Sabes had any communications with Smithline at all, these communications were all in his corporate capacity on behalf of FOXO. *Id.* at ¶ 19. All correspondence between Sabes, as corporate-representative, and Smithline took place outside of New York. *Id.* at ¶¶ 6, 12. Sabes

never met with Smithline in New York. *Id.* at ¶ 8. Sabes executed the Financing Documents and Amendment on behalf of FOXO outside of New York. *Id.* at ¶ 12.

### B.  Allegations Against Sabes.

At all relevant times, Sabes was the CEO of FOXO. Donovan Decl. Ex. A (Compl. ¶ 6). He joined FOXO in May 2019 upon fully divesting himself from his prior company, GWG Holdings LLC. Sabes Decl. ¶ 13.

Smithline was introduced to FOXO through J GUN, a New York-based broker-deal and investment banker. Donovan Decl. Ex. A (Compl. ¶ 6). On or about January 25, 2021, FOXO and Smithline (through its predecessor-in-interest, Puritan) entered into the Financing Documents, namely the SPA, the Debenture, and the Warrant. *Id.* at ¶ 8. The Financing Documents provided the terms under which Smithline invested $1,000,000 in FOXO in the form of debentures and warrants. *Id.* Among the terms of Smithline's investment, Smithline's shares were subject to a lock-up agreement that provided certain conditions before Smithline could sell. *Id.* at ¶ 14. J GUN arranged all of the financing under the Financing Documents and the subsequent round of investments at issue in this action. *Id.* at ¶ 8.

On or about January 17, 2022, approximately a year after the sale of the Debentures, Sabes allegedly circulated a memorandum entitled "FOXO Updates and Amendments" to its investors ("Memo"), which advised the investors that FOXO was seeking to amend the SPA in furtherance of a prospective merger ("Merger") with a special purpose acquisition company called Delwinds Insurance Acquisition Corp. (the "SPAC") *Id.* ¶¶ 18-19.

After the Memo was circulated, J GUN, as broker-dealer and investment banker, performed its function of both negotiating the terms of the amendment with FOXO on behalf of its investors and soliciting the consent to the amendment on behalf of FOXO. *Id.* at ¶ 26. Although Smithline

alleged that Sabes "wrested control of the transaction from J GUN" and solicited the investors "on different terms," it notably acknowledged that Smithline's subsequent discussions concerning the proposed amendment was largely with J GUN, not Sabes. *Id.* at ¶¶ 27-28. Ultimately Smithline consented to and executed the Amendment. *Id.* at ¶ 27. The Merger was announced on February 24, 2022, *id.* at ¶ 32, and closed on September 15, 2022, *id.* at ¶ 52.

Smithline alleges that after it consented to and executed the Amendment, it purportedly discovered material facts that were intentionally withheld from it by Sabes and FOXO, which, if disclosed, would have impacted its decision to consent to the Amendment (and to have entered into the initial investment agreements, *i.e.* the Financing Documents, in the first place).

Smithline claims that Sabes and FOXO failed to disclose that the Merger included a management share plan, of which Sabes would be entitled to 35% of such plan shares. *Id.* at ¶ 29. Smithline also claimed that subsequent investors were offered the opportunity to invest without their shares subject to a lock-up agreement. *Id.* at ¶ 30. Although Smithline was offered an opportunity to join the second round of investments in exchange for the release of its prior locked-up shares, Smithline declined. *Id.* at ¶¶ 46-47. Smithline also claims that Sabes and FOXO failed to disclose that the SPAC would only commit to deliver $10 million of the $200 million consideration for the transaction. *Id.* Finally, Smithline alleges that Sabes and FOXO failed to disclose payment to an existing stockholder, Bespoke Growth Partners, Inc. ("Bespoke") for advisory services, allegedly arranged by Sabes, which Smithline claims was a dilutive issuance. *Id.* at ¶¶ 34, 36.

Smithline also claims that after it consented to the Amendment, it learned for the first time from a *Wall Street Journal* article dated June 24, 2022, that Sabes' former company, GWG Holdings LLC, was under an SEC investigation since October 2020 and subject to lawsuits from

investors. *Id.* at ¶ 43. Smithline contends that this constituted a material misrepresentation in that the Financing Documents and Amendment contained a representation that FOXO and its officers were not and had not been under investigation by the SEC. *Id.* at ¶ 12. But Sabes is not (and was never) a target of the GWG Holdings SEC investigation, nor was he named in any of the purported lawsuits. Sabes Decl. ¶ 15.

Smithline alleges that the price per share upon consummation of the Merger was $10.14 per share. Donovan Decl. Ex. A (Compl. ¶¶ 55-56). As of November 17, 2022, FOXO's stock price closed at $0.444 per share. *Id.* Certain investors, whose shares were not subject to a lock-up agreement, allegedly exited their positions at the market-high price of $10.14/share, while Smithline (whose shares were subject to a lock-up agreement) could not. *Id.*

Sabes was terminated as CEO effective as of November 14, 2022. *Id.* at ¶ 59.

On or about November 18, 2022, Smithline commenced this action in the Supreme Court of the State of New York, New York County. Donovan Decl. Ex. A. The case was removed to this Court by FOXO based on diversity, filed on December 23, 2022. Donovan Decl. Ex. B (Notice of Removal).

Smithline now asserts three causes of action against defendants: breach of contract (as against FOXO); unjust enrichment (as against FOXO and Sabes) and fraud (as against FOXO and Sabes). Underlying each these causes of action are five alleged misrepresentations and omissions, namely that FOXO and Sabes:

> (1) falsely represented to Smithline that its officers were not involved in litigation or SEC investigation;
>
> (2) materially omitted to advise Smithline that the SPAC transaction contained numerous self-dealing provisions including the management share plan;
>
> (3) materially omitted to advise Smithline that the second round debenture investors were not locked up when soliciting Smithline's consent and agreement to the Amendment;

(4) materially omitted to advise Smithline that the SPAC (through its sponsor group) was not delivering more than $10 million to the merged company; and

(5) materially omitted to recognize the dilutive issuance to Bespoke which would have entitled Smithline to significantly more shares.

*Id.* at ¶ 76; *see also id.* at ¶ 65.

As a result, Smithline claims that it has been damaged in an amount to be determined at trial "but estimated to exceed $6,206,768 (*i.e.,* the amount that the Debenture and Warrant— without giving effect to the dilutive issuance's impact to the number of shares to be purchased thereunder—should have been required to be purchased at the consummation of the merger), plus accrued interest and late fees under the Debenture, each at 18% until the date of repayment." *Id.* ¶¶ 68, 74, 80.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER SABES.

### A.  Legal Standard.

"A court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question and must dismiss the action against any defendant over whom it lacks personal jurisdiction." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967 (LJL), 2021 WL 918556, at *4 (S.D.N.Y. Mar. 10, 2021) (*citing Lugones v. Pete & Gerry's Organic, LLC*, 2020 WL 871521, at *2 (S.D.N.Y. Feb. 21, 2020)); *see also Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). When a plaintiff fails to make the requisite showing of jurisdiction over a defendant, the appropriate remedy is dismissal of all claims against that defendant. *TAGC Mgt., LLC v. Lehman*, 2011 WL 3796350, at *3 (S.D.N.Y. Aug. 24, 2011).

Personal jurisdiction in a diversity case is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.

2001); *see also* FRCP 4(k)(1)(A). This determination involves a two-step analysis. As the Court

succinctly stated in *Metropolitan Life Ins. Co.*:

> First, it must determine whether the plaintiff has shown that the defendant is
> amenable to service of process under the forum state's laws; and second, it must
> assess whether the court's assertion of jurisdiction under these laws comports with
> the requirements of due process.

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996), *cert. denied*,

519 U.S. 1006 (1996).

The plaintiff bears the burden to demonstrate that the Court has personal jurisdiction over

each non-domiciliary defendant. *Metropolitan Life Ins. Co.,* 84 F.3d at 566; *In re Aegean Marine*

*Petroleum Network, Inc. Sec. Litig.*, 529 F.Supp.3d 111, 135 (S.D.N.Y. 2021) ("To allege personal

jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to

establish personal jurisdiction separately over each defendant."). The plaintiff must make a *prima*

*facie* showing of jurisdiction based upon the pleadings and supporting affidavits. *Robinson v.*

*Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). While jurisdictional allegations

will be viewed liberally, the Court will not "draw argumentative inferences" in the plaintiff's favor.

*Id.* (*citing Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992)).

Nor will a Court "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist*

*Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013).

Even accepting the allegations in the Complaint as true, Smithline wholly fails to allege

any basis for this Court's exercise of personal jurisdiction over Sabes. The Complaint does not

contain a single jurisdictional allegation (let alone the requisite *prima facie* showing) to subject

Sabes, a Texas resident, to personal jurisdiction in New York. Even if it had, Sabes does not have

the requisite minimum contacts with New York sufficient to satisfy constitutional due process

considerations.

### B.  The Financing Documents Do Not Serve as a Basis for Exercising "Exclusive General Jurisdiction" over Sabes in New York.

The sole jurisdictional allegation Smithline makes against *any* defendant in its 74-paragraph Complaint is against FOXO only. Smithline alleges that, under the forum-selection clauses in the Financing Documents, "both Smithline and FOXO submitted themselves to the laws of the State of New York with exclusive general jurisdiction in the courts of the State of New York, Borough of Manhattan." Donovan Decl. Ex. A (Compl. ¶ 7). Smithline offers nothing to allege or demonstrate that <u>Sabes</u>, sued here in his individual capacity, should be haled into this Court. For this reason alone, the Complaint should be dismissed against Sabes, a non-domiciliary defendant. *See Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co*., 586 F. App'x 768, 769 (2d Cir. 2014) ("Nevertheless, CIG must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone.") (*citing Jazini v. Nissan Motor Co*., 148 F.3d 181, 185 (2d Cir. 1998)).

While it is true that the parties to a contract that contains a forum-selection clause may waive their right to object to personal jurisdiction, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985), recent decisions in this Circuit reflect a reluctance by courts to blindly and broadly apply that same concept to non-party corporate-signatories without appropriate constitutional due process protections. *See, e.g., HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-00967, 2021 WL 918556, at *4 (S.D.N.Y. Mar. 10, 2021) ("In the absence of either consent or acts sufficient to satisfy long-arm jurisdiction and due process, the Court has no power over Eliezer and Niryaev [corporate-signatory individual defendants]."); *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F.Supp.3d 379, 395 (S.D.N.Y. 2019) (noting that the "constitutional requirements" that govern personal jurisdiction "caution against a liberal application of forum selection clauses to non-signatory defendants"); *see also Diamond v. ShiftPixy, Inc*., No. 20-CV-

7305, 2021 WL 3085405, at *14 n.9 (S.D.N.Y. July 19, 2021) (declining to opine on whether corporate defendant who signed agreement on behalf of corporation was bound to the agreement's jurisdiction clause, and instead conducting jurisdictional analysis based on New York's long arm statutes and due process considerations). *But see, e.g., Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767, 2003 WL 22882137, at *5–6 (S.D.N.Y. Dec. 4, 2003) ("In order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound.") (internal citations omitted).

In order to personally bind a corporate representative to a contract executed on behalf of a company, there must be "clear and explicit evidence" of an intent to bind the individual. *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 467 F. App'x 4, 10 (2d Cir. 2012) ("Under New York law, it is well-established that an agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.") (internal citations omitted). "For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity." *Id.*

Sabes is not a party to the Financing Documents. *See* Donovan Decl. Ex. A (Compl. ¶ 8) ("On or about January 25, 2021, Puritan Partners LLC entered into the SPA with FOXO"). There is no allegation that Sabes was asked to, or did, execute any of the Financing Documents in his individual capacity. *See generally, id.* The very fact that Smithline's contractually-based jurisdictional statement and its breach of contract claim concern FOXO alone (and not Sabes) makes clear that neither party, including Smithline, intended for Sabes to be individually and personally bound by the terms of the Financing Documents including the forum-selection clause.

Smithline's failure to allege *any* specific facts in support of this Court's exercise of personal jurisdiction over Sabes, a Texas resident, renders its claims against him in this forum moot.

### C.  Smithline Fails to Otherwise Establish that this Court Has "Exclusive General Jurisdiction" over Sabes.

Even if the Court were to consider Smithline's strained "exclusive general jurisdiction" statement to apply to Sabes (notwithstanding the fact that Smithline does not plead *any* basis for personal jurisdiction over Sabes), a straightforward application of New York's general jurisdiction law quickly dismantles any such argument.

Applying Section 301 of the New York Civil Practice Law and Rules ("CPLR") (New York's general jurisdiction statute), a court has general personal jurisdiction over an individual if his conduct with New York is "so continuous and systematic as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"An individual defendant 'cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation.'" *Wallace Church & Co. Inc. v. Wyattzier, LLC,* No. 20-cv-1914 (CM), 2020 WL 4369850, at *5 (S.D.N.Y. Jul. 30, 2020) (*quoting Brinkmann v. Adrian Carriers, Inc*., 29 A.D.3d 615 (2006)). "To determine whether a defendant does business in the state, the Court must be able to say from the facts that the defendant is present in the State not occasionally or casually, but with a fair measure of permanence and continuity." *Id*. at *4. "The New York courts, in applying the pragmatic test for section 301 jurisdiction, have focused upon factors including: the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd*., 763 F.2d 55, 58 (2d Cir. 1985).

There is no general jurisdiction over Sabes under CPLR § 301 because he does not reside in New York or personally conduct business in New York sufficient to demonstrate "continuous, permanent and substantial activity in New York." *See Landoil Resources v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990). Sabes is a Texas resident and has been for the past three years, prior to which he was a Minnesota resident for 20 years. Sabes Decl. ¶¶ 2-3; Ex. A (Texas Driver's License). Sabes owns no property in New York, does not own or rent real property in New York and does not avail himself of banking services in New York. *Id.* at ¶¶ 4-5. Sabes has not conducted business in New York on his own behalf for the last 15 years (*id.* at ¶ 9), and has only visited New York on business for FOXO less than three times in the last few years. *Id.* at ¶ 7. For its part, FOXO is incorporated in Delaware (*see* Donovan Decl. Ex. A [Compl. ¶ 5]) and, at all relevant times, had its principal place of business in Minneapolis, Minnesota. Sabes Decl. ¶ 10. Neither FOXO nor Sabes have offices or employees in New York. *Id.* at ¶¶ 6, 11.

In short, Smithline's failure to allege that Sabes is "at home" in New York renders this Court unable to exercise general personal jurisdiction over him. *See, e.g., Wallace Church & Co. Inc.,* 2020 WL 4369850, at *5 ("Because a corporate officer cannot be subject to general jurisdiction under CPLR § 301 for his New York activities on behalf of a corporation, and because Plaintiffs allege only that Individual Defendants did business in New York within their role as corporate principals, Individual Defendants are not subject to personal jurisdiction pursuant to CPLR § 301.") (internal citations omitted).

### D.  Smithline Cannot Establish that Sabes Has the Requisite Minimum Contacts with New York to Satisfy Constitutional Due Process Considerations.

Due process requires that a non-domiciliary defendant have certain minimum contacts with the forum state and "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). A court cannot exercise

personal jurisdiction unless "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The plaintiff must demonstrate that both a statutory basis for jurisdiction and constitutional due process considerations have been satisfied; the absence of either renders the court unable to exercise jurisdiction over the non-domiciliary defendant. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007) ("Even if the New York Court of Appeals concludes that personal jurisdiction is proper under § 302(a)(1) of the New York long-arm statute, this Court must make the ultimate determination whether this jurisdiction satisfies constitutional due process.").

The Complaint is devoid of any allegation that would satisfy due process. Smithline fails to allege a single fact demonstrating that Sabes has minimum contacts with New York State so as to reasonably anticipate being sued in New York. As stated above, *see* Point I.C *supra*, Sabes does not live in New York, own property in New York, or conduct business in New York. Sabes Decl. ¶¶ 2-6. Sabes has never commenced a lawsuit in New York, and, until this action, has never been sued in New York. Sabes Decl. ¶ 14. Sabes was served with the Summons and Complaint in this action at his home in Texas. *Id.* at ¶ 16. Sabes has little-to-no personal or business connections to New York. The absence of any allegations demonstrating that Sabes, personally, aimed his conduct toward New York means that this Court cannot exercise personal jurisdiction over Sabes without offending traditional notions of fair play and due process.

In short, Smithline wholly fails to assert any basis upon which this Court can exercise personal jurisdiction over Sabes. The Complaint must be dismissed as against Sabes in its entirety.

## II. EVEN ASSUMING PERSONAL JURISDICTION (THERE IS NONE), SMITHLINE'S CLAIMS AGAINST SABES NONETHELESS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED.

### A. Legal Standard.

In order to survive dismissal under Rule 12(b)(6), the complaint must contain "enough factual matter (taken as true) to suggest"—not merely to make it possible—that every element of the claim is satisfied. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also In re Take-Two Interactive Secs. Litig.*, 551 F. Supp. 2d 247, 259 (S.D.N.Y. 2008) ("Under Rule 12(b)(6), the touchstone for adequate pleading is plausibility."). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Avenue Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the Court is not required to credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555). The complaint must do more than offer "naked assertions devoid of further factual enhancement," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

Even if Smithline adequately met its burden to demonstrate that this Court has personal jurisdiction over Sabes (it does not), the allegations contained in the Complaint as against Sabes fail to satisfy the elements of the claims asserted against him. Accordingly, the claims against Sabes fail as a matter of law and must be dismissed.

### B. Smithline Fails to State a Claim Against Sabes for Fraud (Count III).

To state a claim of fraud under New York law, Smithline must allege: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). When the

alleged fraud involves an omission of material fact, it is actionable only if the defendant had a duty to disclose. *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 369 (S.D.N.Y. 2020). A claim of fraud must be alleged with the particularity required by FRCP Rule 9(b), requiring that plaintiff: "(1) specify the statements that the claimant contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 369.

Smithline claims that Sabes defrauded Smithline by misrepresenting that neither FOXO nor its officers were involved in litigation or SEC investigation (Donovan Decl. Ex. A (Compl. ¶ 12), and failing to disclose to Smithline certain terms and conditions concerning the contemplated SPAC Merger prior to Smithline's consent to the Amendment (*id.* at ¶ 74). Smithline alleges that it relied on the alleged misrepresentation and omissions, causing it to enter into the Financing Documents and the Amendment to its detriment. *Id.* Smithline claims that it was therefore injured in the amount of $6,206,768, which is the value of the Debenture and Warrant upon applying FOXO's record-high share price on the day the Merger was consummated, plus interest and late fees at 18%. *Id.* at ¶ 80.

Smithline's fraud claim cannot withstand scrutiny when examined under the lens of specificity as required by Rule 9(b) and therefore must be dismissed.

1. *No Fraudulent Inducement of Smithline's Initial Investment in FOXO Because the Alleged Omissions Concerned Post-Financing Transactions.*

Smithline's claim that Sabes' alleged failure to disclose caused it to enter into the Financing Documents and invest $1,000,000 in FOXO must be dismissed out of hand as legally untenable and factually illogical.

Smithline executed the Financing Documents in or about January 2021. *Id.* at ¶ 8. The identified omissions, however, concern terms and conditions of FOXO's contemplated merger

with a SPAC, which took place a year later in 2022. To be sure, these complained-of omissions were: "that the SPAC transaction contained numerous self-dealing provisions including the management share plan"; "that the second round debenture investors were not locked up when soliciting Smithline's consent and agreement to the Amendment"; "that the SPAC (through its sponsor group) was not delivering more than $10 million to the merged company"; and a failure to "recognize the dilutive issuance to Bespoke which would have entitled Smithline to significantly more shares." *Id.* at ¶ 76. Nothing in the Complaint alleges that any of these so-called material facts were known to Sabes prior to Smithline's *initial* January 2021 investment (or that an SPAC Merger was even in the pipeline at that point), let alone that these "facts" would have impacted Smithline's decision to invest in FOXO in the first place.

Further driving home this point, Smithline's own recitation of the alleged misconduct begins with the circulation of the Memo in January <u>2022</u> (a year after Smithline's initial investment), advising FOXO's existing investors (including Smithline) of the contemplated SPAC Merger for the first time. *Id.* at ¶ 18. Sabes is not clairvoyant. Smithline cannot complain that it was fraudulently induced into making its initial investment in FOXO upon Sabes' ostensible failure to disclose the terms and conditions of a future, as-yet uncontemplated merger. *See New York Univ. v Factory Mut. Ins. Co*., 15 CIV. 8505 (NRB), 2018 WL 1737745, at *8 (S.D.N.Y. Mar. 27, 2018) ("fraudulent inducement requires a material misrepresentation of a presently existing or past fact") (internal citations omitted).

Accordingly, to the extent Smithline contends that Sabes' alleged omissions fraudulently induced Smithline (through its predecessor-in-interest) to enter into the Financing Documents and to invest $1,000,000 in FOXO, such claim must be dismissed for lack of an intent to defraud or reasonable reliance by Smithline.

2.  *No Fraudulent Inducement of the Amendment Because There Was No Reasonable Reliance on the Alleged Omissions, and No Damages.*

Smithline claims that the omissions concerning certain terms and conditions of the contemplated SPAC Merger were not disclosed to Smithline prior to Smithline's consent to and execution of the Amendment. Donovan Decl. Ex. A (Compl. ¶ 77). Smithline again fails to plead its claim with requisite specificity.

Smithline fails to specify Sabes' individual role in the supposed fraud as concerns the alleged omissions. The only concrete allegation against Sabes is that he purportedly circulated the Memo on January 17, 2022, advising Smithline that FOXO was seeking to amend the SPA in furtherance of the contemplated SPAC Merger. *Id.* at ¶ 18. Smithline complains that the Memo excluded certain material information concerning terms and conditions of FOXO's contemplated merger with the SPAC, including information about a management share plan; details concerning the second-round offering; a $10 million commitment from the SPAC; and the payment of consultant fees to an existing shareholder (Bespoke) arising out of services related to the resulting public offering transaction (*i.e.* the complained-of omissions). *Id.* at ¶ 21. While Smithline alleges that Sabes circulated the Memo, the Complaint does not allege that Sabes himself drafted the Memo or, more importantly, that Sabes circulated the Memo on his own behalf or at the behest of FOXO. Furthermore, Smithline fails to allege that the "omissions" were intended to defraud. Indeed, the more likely explanation for the ostensible omissions is that FOXO simply had not yet finalized the deal terms of the contemplated SPAC Merger.

In any event, Smithline cannot claim reasonable reliance on the Memo in consenting to the Amendment because Smithline concedes that it was FOXO's New York based broker-dealer, J GUN—and not Sabes—that solicited Smithline's consent of the Amendment. *Id.* at ¶¶ 8, 22-25. According to Smithline, J GUN "was in the position of both negotiating the terms of the

17

amendment with FOXO on behalf of its investors and <u>soliciting the consent to the amendment on behalf of FOXO</u>" *Id.* at ¶ 26 (emphasis added). Smithline further admits that, "J GUN arranged all of the financing under the Financing Documents <u>and in connection with the subsequent round of investments at issue in this action</u>." *Id.* at ¶ 8. *See Ithaca Cap. Invs. I S.A.*, 450 F. Supp. 3d at 372 ("Absent some factual allegations of something that they would have done, [movants] cannot rely on their general, conclusory [allegation] of reliance.")

Although Smithline broadly claims that Sabes "wrested control of the transaction from J GUN and covertly and directly solicited the Debenture investors, including Smithline, on different terms," *id.* at ¶ 27, this allegation is altogether too vague and conclusory to support a fraud claim or withstand the Rule 9(b) specificity requirement. Likewise, Smithline's sweeping allegation that Sabes failed to disclose under "direct questioning by Smithline as to the terms of the SPAC transaction," *id.* at ¶ 29, is just as unsustainably conclusory.

Equally fatal to Smithline's fraud claim is its failure to draw a causal connection between Sabes' supposed fraudulent omissions and Smithline's claimed injury. *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 776 (S.D.N.Y. 2011) ("To establish causation, plaintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation).") (internal citation omitted). Smithline claims it is entitled to cash out its 647,774 shares in FOXO, to be valued at the share price upon the consummation of the Merger ($10.14/share), and not the substantially lower current share price (as reflected in the market at the time the action was commenced at $.0444/share). Donovan Decl. Ex. A (Compl. ¶¶ 56-57). But Smithline fails to allege any connection between the alleged omissions to explain why it should be entitled to cash out on terms other than what it agreed to in the Financing Documents

and Amendment. The Financing Documents contain a lock-up agreement with certain restrictions placed upon Smithline before selling its FOXO shares. Smithline concedes that J GUN later approached Smithline to solicit further investment in FOXO in exchange for removing the lock-up on the original shares, which Smithline declined to participate in. *Id.* at ¶¶ 46-47. Smithline can hardly complain that it was subject to an unfair lock-up agreement when it was given the opportunity to remove that obstacle.

In short, Smithline wholly fails to allege with specificity that Sabes personally failed to disclose material information to Smithline in advance of Smithline's consent and execution of the Amendment, such that Smithline detrimentally relied on the incomplete representations and suffered injury therefrom. The claim therefore must be dismissed.

   3. *The Alleged Misrepresentation Cannot Serve as a Basis for the Fraud Claim Because Smithline Stops Short of Actually Alleging That Sabes Made A False Representation.*

Smithline claims that Sabes materially misrepresented to Smithline that neither FOXO nor its officers were involved in litigation or an SEC investigation, pointing to a June 24, 2022 *Wall Street Journal* article reporting on an ongoing SEC investigation and litigations at Sabes' prior company, GWG Holdings LLC. *Id.* at ¶ 43. But, while Smithline craftily *implies* that Sabes was involved in the investigation and/or lawsuits, it falls short of actually pleading a direct allegation that Sabes was involved in the investigation and/or lawsuits.

Specifically, Smithline alleges that Sabes' former company, GWG Holdings, was under an SEC investigation from October 2020 for "activities taking place during Sabes' tenure as Chairman and CEO of GWG Holdings." *Id.* Likewise, Smithline claims that the SPAC's proxy statement disclosed "litigation relating to GWG Holdings for activities which took place during Sabes' tenure as Chairman and CEO." *Id.* These allegations fail to claim, even upon information and belief, that Sabes was personally involved in the GWG Holdings SEC investigation or lawsuits.

Smithline cannot make this claim because Sabes is not, and was never, involved in either the SEC investigation or any of the alleged lawsuits. Sabes divested his interest in GWG Holdings in May 2019, well before the October 2022 investigation or lawsuits. Sabes Decl. ¶ 15.  Obviously there can be no claim of fraudulent misrepresentation if there was no misrepresentation.

Smithline also fails to allege that Sabes personally made the alleged misrepresentation to Smithline, upon which Smithline detrimentally relied. At best, Smithline claims that the misrepresentation was made a part of the representations contained in the Financing Documents and the Amendment. Donovan Decl. Ex. A (Compl. ¶ 65[a]). But, Sabes is not a party to those documents and did not sign them in his individual capacity, and the Complaint is otherwise devoid of any alleged misrepresentation <u>Sabes</u> personally made to Smithline.

Accordingly, the fraud claim against Sabes cannot be sustained as a matter of law and must be dismissed in its entirety.

### C.  Smithline Fails to State a Claim Against Sabes for Unjust Enrichment (Count II).

To prevail on a claim for unjust enrichment under New York law, a plaintiff must establish: "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). "It is not sufficient for defendant to receive some indirect benefit—the benefit received must be 'specific and direct' to support an unjust enrichment claim." *M+J Savitt, Inc. v. Savitt*, 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) (*citing Kaye*, 202 F.3d at 616). Smithline's unjust enrichment claim against Sabes fails to satisfy any one of the three elements required, let alone all three.

Smithline fails to allege that Sabes directly benefitted at Smithline's expense for which equity and good conscience require restitution. The only "benefit" Sabes is alleged to have

personally received is that, pursuant to a management share plan under the terms of the SPAC transaction, "Sabes was personally granted over 35% of such plan shares (*i.e.,* 3,507,000 shares at approximately $10.14/share) valued at $35,560,980 at the time of the grant." Donovan Decl. Ex. A (Compl. ¶ 29). But, Smithline fails to allege that this "benefit" was actually received by Sabes or that it was at the expense of Smithline. Smithline does not allege that there was some inherent impropriety concerning the management share plan or that Smithline was entitled to the funds allegedly distributed pursuant to such management share plan. More importantly, there is no connection between the benefit Sabes purportedly received (Sabes' portion of the management share plan) and the damages Smithline seeks (cash out of its investment calculated by the share price at the time of the Merger). *See M+J Savitt, Inc.*, 2009 WL 691278, at *10 ("To bring such a claim, the plaintiff must have bestowed the benefit on the defendant.").

The unjust enrichment claim also must be dismissed because Smithline alleges that the supposed benefit that FOXO and Sabes obtained arose out of "Smithline's performances in connection with the Financing Documents and the SPAC merger." Donovan Decl. Ex. A (Compl. ¶ 71). Unjust enrichment is a quasi-contract claim that arises in the <u>absence</u> of an agreement that governs that subject matter. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.") (citing *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 [2005]). Not only does Smithline outright concede that there are relevant contracts that govern the complained-of conduct, Smithline actually asserts a breach of contract claim (albeit against FOXO, only) for the very same conduct. *See* Donovan Decl. Ex. A (Compl. ¶¶ 61-68); *see also* Point II.D.2, *infra*.

Accordingly, the unjust enrichment claim as against Sabes should be dismissed.

21

### D.  The Claims Against Sabes Are Duplicative and Must Be Dismissed.

Further highlighting the muddled quality of the Complaint, the claims as against Sabes are duplicative of each other and of the breach of contract claim against FOXO. Each claim alleges the same conduct by the same parties and seeks the same measure of damages.

### 1.  Fraud Is Duplicative of the Breach of Contract.

Under New York law, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *FPP, LLC v. Xaxis US, LLC*, 764 F. App'x 92, 93–94 (2d Cir. 2019) (internal citation omitted). "It is well settled that a cause of action for fraud will not arise when the only fraud charged relates to a breach of contract." *Rosenblatt v. Christie, Manson & Woods Ltd.*, No. 04 CIV. 4205 (PKC), 2005 WL 2649027, at *10 (S.D.N.Y. Oct. 14, 2005), *aff'd sub nom. Rosenblatt v. Christie*, 195 F. App'x 11 (2d Cir. 2006). In cases where a plaintiff alleges both a breach of contract and fraud, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted).

Smithline's fraud claim against Sabes merely restates its breach of contract claim against FOXO. In fact, the misrepresentation and omissions Smithline identifies in its fraud claim are the first five breaches of the Financing Documents alleged in its breach of contract claim. *Compare* Donovan Decl. Ex. A (Compl. ¶ 76, Fraud) *with id.* (Compl. ¶ 65[a] – [e], Breach of Contract).

The claimed damages for both the fraud and the breach of contract claims are identical: "$6,206,768 (*i.e.*, the amount that the Debenture and Warrant—without giving effect to the dilutive issuance's impact to the number of shares to be purchased thereunder—should have been required

22

to be purchased at the consummation of the merger), plus accrued interest and late fees under the Debenture, each at 18% until the date of repayment." *Compare id.* (Compl. ¶ 80, Fraud) *with id.* (Compl. ¶ 68, Breach of Contract); *see also Clement v. Farmington Cas. Co.*, No. 13-CV-1026 NSR, 2015 WL 6971565, at *7 (S.D.N.Y. Nov. 10, 2015) ("Additionally, where damages arising from a fraud claim are identical to those damages resulting from a breach of contract, courts have dismissed fraud claims as duplicative of breach of contract claims.")

Finally, Smithline fails to allege that Sabes possessed "a legal duty separate from the duty to perform under the contract" sufficient to sustain a separate fraud claim against him. *See Ithaca Cap. Invs. I S.A.*, 450 F. Supp. 3d 370. Nowhere in the Complaint does Smithline allege any special relationship between it and Sabes, and none exists. *See* Sabes Decl. ¶ 18.

Accordingly, the fraud claim must be dismissed for the additional reason that it is duplicative of the breach of contract claim.

## 2. *Unjust Enrichment Is Duplicative of Fraud and Breach of Contract.*

In addition to the reasons set forth in Point II.C, *supra*, the unjust enrichment claim must also be dismissed as duplicative of Smithline's fraud and breach of contract claims. Unjust enrichment is "not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790–91 (2012) (holding that an "unjust enrichment is not a catchall cause of action to be used when others fail"); *Gerszberg v. Iconix Brand Grp., Inc.*, 2018 WL 2108239, at *5 (S.D.N.Y. May 7, 2018); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015). Unjust enrichment claims are generally only appropriate in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 N.Y.3d at 790; *Cont'l Indus. Grp., Inc. v. Altunkilic*, 2018 WL 1508566, at *9 (S.D.N.Y. Mar. 27, 2018).

Smithline's unjust enrichment claim stems from the same underlying allegation *i.e.*, that Smithline was fraudulently induced to enter into, and perform under, the Financing Documents and Amendment based upon Sabes' purported misrepresentation and omissions. *See* Donovan Decl. Ex. A (Compl. ¶ 71, Unjust Enrichment). In fact, Smithline's own recitation of the claim implicates both fraud ("FOXO and Sabes made numerous misrepresentations and material omissions to Smithline and provided inaccurate and misleading information") and breach of contract ("Sabes and his cohorts benefitted from Smithline's performances in connection with the Financing Documents and the SPAC merger."). *Id.* Smithline's unjust enrichment claim seeks an identical calculation of damages as both breach of contract and fraud claims (*i.e.* $6,206,768 + accrued interest and late fees). *Id.* at ¶ 74.

The unjust enrichment claim is duplicative of the fraud and breach of contract claims and must be dismissed. *See, e.g., Izquierdo v. Mondelez Int'l, Inc*., No. 16-CV-04697 (CM), 2016 WL 6459832, at *10 (S.D.N.Y. Oct. 26, 2016) ("Here, all of Plaintiffs' causes of action have been dismissed. Their unjust enrichment claim cannot cure the failings of their other causes of action.").

## CONCLUSION

For the foregoing reasons, the Court should GRANT Sabes' motion to dismiss in its entirety.

Dated:   New York, New York
         February 1, 2023

Respectfully Submitted,

FARRELL FRITZ, P.C.


By:  /s/ Matthew D. Donovan
         Matthew D. Donovan
         Becky (Hyun Jeong) Baek

622 Third Avenue, Suite 32700
New York, New York 10017
Tel:  (212) 687-1230

*Attorneys for Defendant Jon Sabes*

FF\13254442.4