

MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/17/2023

February 16, 2023

<u>VIA CM/ECF</u>

Hon. Valerie E. Caproni, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
Room 240
New York, New York 10007

    Re.:    <u>Smithline Family Trust II, as Assignee v. FOXO Technologies, Inc. *et al.*
             U.S. District Court, S.D.N.Y., Case No. 22-cv-~~1058~~ (VEC)</u>
                                               10858

Dear Judge Caproni:

       The parties submit this Joint Letter pursuant to the Court's Notice of Initial Pretrial Conference (ECF Doc. No. 5) dated December 30, 2022, to address the following issues raised by the Court therein:

    **1.**  **<u>Brief Description of the Case</u>**

       **Plaintiff's Position**: This case involves state law claims for breach of contract, unjust enrichment, and fraud against Defendant FOXO Technologies, Inc. ("FOXO"), and for unjust enrichment and fraud against Defendant Jon Sabes ("Sabes"), the former C.E.O. and Chairman of FOXO. The claims concern a debenture and warrant investment and subsequent merger of FOXO with a special purpose acquisition company ("SPAC") called Delwinds Insurance Acquisition Corp. ("Delwinds").

       In January 2021, Plaintiff's assignor, Puritan Partners LLC ("Puritan"), entered into a securities purchase agreement ("SPA") and convertible debenture ("Debenture") due February 2022 to purchase up to 312,500 shares of FOXO common stock. Under the SPA, Puritan purchased debentures and warrants ("Warrant") from FOXO for $1,000,000. In the context of the SPA and Debenture, FOXO represented that FOXO, its subsidiaries, officers, and directors were not and had not been the subject of any securities law or breach of fiduciary duty claims. FOXO also agreed that, if at any time while the Debenture is outstanding, FOXO or any subsidiary sells or grants any option to purchase any of FOXO's common stock at a price per share that is lower than the then conversion price (or, in the case of the Warrant, the exercise price), FOXO was required to notify the existing holders—including Plaintiff— and reduce the conversion price of the existing Debenture (or the exercise price of the Warrant) to the dilutive price, and the Debenture and Warrant holders would be entitled to receive additional shares at the dilutive price upon conversion of their Debentures or exercise of their Warrants. The SPA

Hon. Valerie E. Caproni, U.S.D.J.
United States District Court
February 16, 2023
Page 2

also provided for the delivery of a lock-up agreement, to prevent the original Debenture investors—such as Plaintiff—from selling their FOXO shares received upon conversion of their Debentures or exercise of their Warrants commencing on the closing date of any qualified offering and continuing for one hundred eighty (180) days thereafter. On or about October 1, 2021, Puritan assigned the Debenture and Warrant to Smithline Family Trust II ("Plaintiff").

On January 17, 2022, Sabes sent Richard Smithline, Plaintiff's authorized representative, a memorandum entitled "FOXO Updates and Amendment" (the "Memo"). In the Memo, Sabes explained that he was seeking to amend the SPA to help FOXO complete a business combination with the SPAC, which he claimed would increase FOXO's value and provide investors. Sabes also claimed the SPAC would significantly increase FOXO's valuation. In reality, Sabes intended to extract the majority of the economics of the transaction for his own gain. The Memo failed to disclose that (i) the SPAC included a $100,000,000 management share plan, which would solely benefit Sabes and his cohorts at the investors' expense; (ii) FOXO was offering to fund a second debenture, which would not be subject to a lock-up agreement; and (iii) the ongoing SEC investigations of Sabes.

To effectuate the SPAC, Plaintiff received an Amendment Agreement ("Amendment"), which would permit the SPAC merger, allow FOXO, *inter alia*, to incur additional debt, amend various definitions, and extend the maturity date of the Debentures. It also sought to modify the Warrant's exercise price, and weaken various definitional language that would trigger an event of default and require repurchase by FOXO. When 50.01% of the investors would not sign the Amendment, Sabes solicited them independently, convincing 50.01%, including Plaintiff, to sign—without knowing that Sabes had misrepresented material facts.

FOXO committed further misconduct after the SPAC occurred. Defendants failed to make numerous required disclosures, gave certain stockholders preferential treatment with share giveaways, which were Dilutive Issuances as defined under the terms of the Debenture and Warrant. None of the representations FOXO and Sabes made to Plaintiff about FOXO's viability proved true. FOXO's price has plummeted from $10.14 per share at the time of the merger, to $0.42 per share, a decline in value of over 95%. Plaintiff has suffered severe and extreme financial losses of approximately $6,206,768.

**Defendant FOXO's Position**: Defendant FOXO Technologies Inc. ("FOXO") disagrees with the baseless allegations of purported wrongdoing asserted by Plaintiff Smithline Family Trust II, as Assignee of Puritan Partners LLC ("Plaintiff" or "Smithline").

Smithline and FOXO, which is a life sciences and technologies company, are parties to a Securities Purchase Agreement, dated January 25, 2021 ("SPA"), an accompanying 12.5% Original Issue Discount Convertible Debenture, initially due February 23, 2022 ("Debenture"), and Warrant to purchase, initially, up to 312,500 shares of FOXO common stock until February 23, 2024 ("Warrant") (collectively, the "Financing Documents"). Plaintiff purchased the Debenture and the Warrant for $1,000,000. On February 18, 2022, Plaintiff and FOXO entered

Hon. Valerie E. Caproni, U.S.D.J.
United States District Court
February 16, 2023
Page 3

into the Revised Contingent Amendment Agreement (the "Amendment"), which amended the Financing Documents.

FOXO has not breached the Financing Documents with Smithline and has complied with all of its obligations.  First, Smithline alleges that FOXO breached the Financing Documents by not disclosing certain information.  However, there was no contractual duty to disclose a non-fact (*e.g.*, a made up fact that Sabes was personally under SEC investigation) and other information that Plaintiff says should have been, but allegedly was not, disclosed (*e.g.*, information relating to the terms of debentures issued to other investors).  Second, Smithline asserts that there were dilutive issuances that required the reduction in the conversion price of the Debenture and exercise price of the Warrant.  However, under the terms of contract, the issuances were exempt from the provisions requiring downward adjustments, and, in any event, were not issued at a value less than the conversion price or exercise price, and thus FOXO was not required to make such adjustments.  Third, Smithline asserts that FOXO breached the Financing Documents by not redeeming the Debenture and buying back the Warrant.  However, the Financing Documents, as amended by the Amendment, which Plaintiff signed, did not require FOXO to undertake these actions.  To the contrary, by entering into the Amendment, Smithline expressly agreed that such actions were not applicable in connection with a business combination.  Notably, in exchange for these modifications, the Amendment provided for significant automatic increases in the outstanding balance of the Debenture for no additional cash investment by Smithline.

Smithline's unjust enrichment and fraud claims fare no better.  Both causes of action are legally and factually fatally flawed.  The unjust enrichment claim fails because Smithline seeks to enforce a purportedly valid contract, while at the same time improperly seeks to recover under a quasi-contractual equitable theory of unjust enrichment.  This claim also fails because the Complaint presents the same alleged conduct as giving rise to the claims for breach of contract and unjust enrichment.  Smithline's fraud claim fails because, among other issues, Smithline does not allege why FOXO had a duty to disclose beyond its contractual obligations, why any alleged omissions would be material, and how it has suffered damages recoverable under a fraud theory.  Additionally, Smithline's fraud claim is improperly duplicative of its breach of contract claim.  Defendant Sabes has moved for dismissal of these claims under Rule 12(b)(6), and FOXO expects to join in Sabes's arguments, via a Rule 12(c) motion, after the pleadings are closed.

**Defendant Sabes' Position:** Sabes, sued here in his personal capacity, denies any wrongdoing and has set forth his bases to dismiss the complaint as against him in its entirety and with prejudice in his motion to dismiss, as further described in Paragraph 2.a below.

2. **Contemplated Motions**

    a. **Sabes Pending Motion to Dismiss**

    On February 1, 2023, Sabes filed a motion to dismiss the complaint pursuant to FRCP 12(b)(2) & (6). It is Sabes' position that this New York Court does not have personal jurisdiction

Hon. Valerie E. Caproni, U.S.D.J.
United States District Court
February 16, 2023
Page 4

over him. Sabes is presently a Texas resident—and, prior to that, a long-time Minnesota resident—with little to no personal or business contact with New York. Plaintiff has not alleged any facts that would demonstrate that there exists personal jurisdiction over Sabes in New York under New York's long-arm statute and that such jurisdiction comports with due process. Sabes is not "at home" in New York, and Plaintiff has not alleged otherwise.

Furthermore, even if this Court could exercise personal jurisdiction over Sabes, the claims against him (unjust enrichment and fraud) are duplicative of the breach of contract claim, each alleging the same core conduct by the same actors and seeking the same measure of damages. And, in any event, the unjust enrichment and fraud claims against Sabes fail to allege the requisite elements, given the dearth of allegations related to Sabes' personal (and not corporate) actions or the causal connection between Sabes' alleged conduct and Plaintiff's supposed injury. Plaintiff fails to identify when, where, and how Sabes in his individual capacity engaged in any actionable conduct to Plaintiff's detriment.

### b. Defendant FOXO's Contemplated Motions

Defendant FOXO intends to move for judgment on the pleadings, in part, under Rule 12(c) after the pleadings are closed. To the extent any issues survive dismissal, Defendant FOXO also anticipates moving for summary judgment after sufficient discovery has been completed, and before the deadline for dispositive motions.

### c. Other

As discovery progresses, the parties reserve the right to engage in motion practice to the extent permitted by the Federal Rules, Local Rules, and Judicial Preferences.

### 3. The Basis for Subject Matter Jurisdiction

Defendant FOXO removed this action from the Supreme Court of the State of New York, County of New York, to the United States District Court of the Southern District of New York pursuant to 28 U.S.C. §§ 1441 and 1446. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because it is a civil action between parties of diverse citizenship (Plaintiff is a citizen of New York; Defendant FOXO is a Delaware corporation with a principal place of business in Minnesota; and Defendant Sabes is a citizen of Texas), and Plaintiff alleges the amount in controversy exceeds $75,000.

### 4. Prospect for Settlement

The case is in its early stages and the parties intend to engage in fact discovery. However, counsel will confer at the appropriate time on the prospect of settlement.

Hon. Valerie E. Caproni, U.S.D.J.
United States District Court
February 16, 2023
Page 5

### 5. Rule 16 Conference

The parties met and conferred and agreed to the dates and terms set forth in the Case Management Plan and Scheduling Order.  In view of this, the parties believe that a Rule 16 conference is unnecessary and respectfully request that the proposed Case Management Plan be so-ordered.

### 6. Discovery Schedule

The parties propose that fact discovery be completed by August 23, 2023, subject to the Court's approval.  Good cause exists to set a deadline for fact discovery that is more than 120 days from the date of the Initial Pretrial Conference.  As discussed with all counsel at the Fed. R. Civ. P. 26(f) conference, FOXO regularly uses Slack for internal business communications, among other workplace collaboration tools.  Collecting, exporting, reviewing, and producing Slack data presents unique challenges.  For example, FOXO has to apply to Slack for permission to export private channel content and direct messages.  Additionally, there is no way to isolate any specific information, such as particular channels or users, and to limit the collection to only that data; rather, all of the Slack data must be converted into a workable format and processed before any information can be extracted.  Moreover, because of the informal, conversational nature of Slack messages, FOXO will likely have to conduct a full review of every message within a potentially relevant channel to confirm relevance and identify privileged content.  This will be a substantial project given that FOXO's in-house attorney is one of three custodians, and although FOXO cannot know the exact volume of Slack data before processing it, FOXO anticipates that there will be thousands of messages.  In order to account for the costs and potential delays associated with processing Slack data, the parties agreed that everyone would benefit from an additional two months of fact discovery so that production of Slack data can be accomplished in time to be used in depositions and expert discovery.  FOXO will prioritize rolling production of emails and other document discovery while Slack-related discovery issues are being addressed.

                Very truly yours,

                /s/ Sameer Rastogi

                Sameer Rastogi

SR/oak
cc:     All counsel of record (via ECF)

The parties' initial pretrial conference, scheduled for February 24, 2023, is hereby CANCELLED. The Court will enter the parties' proposed Case Management Plan by separate order. The Court further reminds the parties of the Undersigned's Individual Practices with respect to discovery disputes.

In light of the lengthy discovery period, however, the parties must submit joint monthly discovery updates on the first business day of every month, with the first joint update being due no later than **April 3, 2023**. The Court warns the parties that it is unlikely to extend the fact discovery deadlines absent extraordinary circumstances.

SO ORDERED.

Date: 2/17/2023

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE